IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11-CV-00096-RLV
(5:08-CR-00048-RLV-DSC-4)

| | |
|---|---|
| RAYMOND CHARLES WEBBER, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court on Respondent's motion to dismiss Petitioner's pro se motion to vacate, set aside or correct sentence, which he filed pursuant 28 U.S.C. § 2255. For the reasons stated herein, the Court finds that Respondent's motion to dismiss should be granted and Petitioner's § 2255 motion will be denied and dismissed.

I. BACKGROUND

A. Indictment and Plea Agreement

Petitioner and others were charged in an indictment returned by the Grand Jury in this district with multiple counts related to a conspiracy to defraud retailers by purchasing high value items with checks that were written on accounts that possessed insufficient funds to pay for the merchandise. (5:08-CR-00048, Doc. No. 3: Indictment) (Count One – Conspiracy, in violation of 18 U.S.C. § 371). The indictment alleged that "check writers" that were recruited by the defendants – this included homeless and drug addicted people – would visit retail stores and write a check for expensive merchandise. The cashier would verify that the check writer had an open checking account, which was opened by one or more of the defendants at multiple banks,

1

and then complete the purchase. Much of the time when the purchases were made, the financial institution which maintained the checking account would be closed for the day. After the transaction was complete, the defendants took possession of the merchandise and then fenced the items in return for large sums of cash. The indictment alleged that this scheme brought in over $880,000.

The indictment also alleged that Petitioner committed acts of wire fraud, while aided and abetted by others, by utilizing wire communication to verify that the checks that would be presented as payment were in fact written on open bank accounts, all in violation of 18 U.S.C. §§ 1343 and 2. (Count Two: Wire fraud). In the final count against Petitioner, the indictment alleged that Petitioner, while aided and abetted by others, committed mail fraud by causing checks to be mailed through interstate commerce to a vacant address, all in violation of 18 U.S.C. §§ 1341 and 2. (Count Four – Mail fraud).

Petitioner was arrested after the indictment was returned and made his initial appearance and was appointed counsel. Petitioner quickly entered into a written plea agreement with the Government in an effort to resolve the charges. Petitioner agreed to plead guilty to the mail fraud charge in Count Four in exchange for the Government's agreement to dismiss the conspiracy charged in Count One and the wire fraud charged in Count Two upon the Court's acceptance of the plea. (Id., Doc. No. 72: Plea Agreement). In the agreement, Petitioner admitted that he was in fact guilty of the conduct charged in Count Four and he acknowledged that for sentencing purposes, the Court might consider any of the conduct alleged in the dismissed counts when considering an advisory term of punishment under the Sentencing Guidelines. The agreement informed Petitioner of the potential penalties – a fine of up to $250,000 and no more than 20-

years' imprisonment – and five years of supervised release, and that by entering into the plea agreement he was waiving his rights to contest his conviction or sentence on direct appeal, or through a collateral proceeding, except on claims of prosecutorial misconduct and/or ineffective assistance of counsel.

B. Rule 11 hearing

After the plea agreement was filed with the Court, Petitioner appeared with counsel for his Plea and Rule 11 hearing before U.S. Magistrate David Keesler, and he was placed under oath. Petitioner stated that he had reviewed the indictment with his attorney and he understood the contents of the indictment. The Court then explained the elements of Count Four, the potential penalties, and the consequences of Petitioner's decision to plead guilty. The Court informed Petitioner that he could elect to plead not guilty and proceed to trial where the Government would have the burden of proving the elements of Count Four beyond a reasonable doubt and that Petitioner could confront witnesses against him, have the assistance of counsel, and present evidence.

Petitioner averred that he had discussed with his attorney how the Sentencing Guidelines might apply to calculation of his sentence, including the imposition of restitution, and Petitioner acknowledged that he understood that he could receive a sentence that was different from a sentence recommended by the Guidelines. The Court also questioned Petitioner regarding his decision to waive his rights to contest his conviction or sentence on direct appeal or through a collateral proceeding, except for his reserved right to raise claims of prosecutorial misconduct or ineffective assistance of counsel. Petitioner swore that he had reviewed the terms of the plea agreement – key terms of which were summarized by the Government during the hearing – and

3

that he agreed with the terms of the plea agreement. Finally, Petitioner averred that he was satisfied with the services of his attorney and that no one had promised him any particular sentence or intimidated or forced him to plead guilty. After a thorough round of questioning, Petitioner admitted that he had understood all parts of the proceeding, and Petitioner signed the plea form indicating that all of the answers that he had given during the hearing were true. The Court then accepted Petitioner's guilty plea after finding that it was knowingly and voluntarily made. (Id., Doc. No. 73: Acceptance and Entry of Guilty Plea; Doc. No. 148: Tr. of Rule 11 hearing).

      C.      Sentencing

The U.S. Probation Office prepared a draft of a presentence report (PSR) in advance of Petitioner's sentencing hearing and circulated the draft for the parties to review. (Id., Doc. No. 92: Draft PSR). After the parties were given time to file written objections to the draft, the probation officer filed the final PSR. The probation officer calculated a base offense level of 7 for the mail fraud violation pursuant to U.S. Sentencing Guidelines Manual (USSG) § 2B1.1. A fourteen-level enhancement was applied because the fraud conspiracy involved more than $400,000, see USSG § 2B1.1(b)(1)(H); a four-level enhancement was applied because the conspiracy involved more than 50 victims, USSG § 2B1.1(b)(2)(B); and two-level enhancement was added pursuant to USSG § 2B1.1(b)(4) because the offenses involved the receipt of stolen property and Petitioner was in the business of receiving and selling such stolen property. (Id., Doc. No. 101: PSR). After crediting Petitioner with a three-level reduction for acceptance of responsibility, the probation officer found a total offense level of 24. The probation officer found that Petitioner had a total of 18 criminal history points which placed him in a Level VI criminal

4

history category. The probation officer noted the 20-year statutory maximum term of imprisonment and calculated a Guideline range of 100 to 125 months in prison. In addition to these findings, the probation officer included a list of victims who lost money as a direct result of the fraud conspiracy and the total loss amount of $906, 387.29 exceeded the total alleged in the indictment.

After the final PSR was filed, Petitioner appeared with counsel for his sentencing hearing and the Court first questioned Petitioner regarding the Rule 11 proceedings. Petitioner confirmed that he understood the elements of the crime of mail fraud and aiding and abetting the same, as charged in Count 4; that he understood the potential penalties; that he was pleading guilty freely and voluntarily; that he was satisfied with the services of his attorney; and that he was in fact guilty of the conduct as charged in Count Four. The parties stipulated that there was a factual basis to support the entry of the guilty plea, and based on that stipulation, the plea of guilty, and the admissions of Petitioner, the Court found that a factual basis did exist and accepted the plea of guilty.

Petitioner next confirmed that he had reviewed the contents of the PSR with his attorney and that he understood the contents of the document. The Court overruled Petitioner's objection to the two-level increase under USSG § 2B1.1(b)(4) for receiving stolen property while engaging in the business of receiving and selling stolen property and adopted the PSR after finding that its contents were supported by credible and reliable evidence, and found that the Petitioner was a criminal history category VI, with 18 criminal history points, and an total offense level of 24 yielding a Guidelines range of 100 to 125 months' active imprisonment.

After his counsel argued for a more lenient sentence based on his contention that

5

Petitioner had a lesser role in the conspiracy than some of the other charged defendants because he was incarcerated for some time while the conspiracy was ongoing, Petitioner addressed the Court and expressed remorse and stated that he accepted full responsibility for his role in the fraud conspiracy. He offered an apology to the victims and explained that he only participated because of the amount of money he could make.

The Government then addressed the Court and noted that the probation officer had considered Petitioner's time spent incarcerated and found that he should be responsible for a lesser amount of restitution – $574, 502 – than some of the other defendants who played greater roles in the fraud conspiracy. The Government also addressed the fact that Petitioner could have been eligible for an enhanced sentence based on his role as a leader in the conspiracy because evidence showed that he had taught at least one of the recruits how to write checks and that he served as recruiter for the scheme as a "right-hand man" for a fellow participant in the scheme.

The Court, having considered the arguments of counsel and allocution from Petitioner, found that a sentence within the Guidelines range was appropriate. The Court observed that Petitioner's criminal history score of 18 exceeded the minimum points necessary to qualify him for a Level VI criminal history category and after examining the factors set forth in 18 U.S.C. § 3553(a), the Court found that a sentence of 125-months' imprisonment was the appropriate sentence and the Court ordered that Petitioner be jointly and severally liable with the remaining co-defendants from the full, calculated loss amount of $906,387.29, and noted that Petitioner, as part of his plea agreement, acknowledged that he would be held responsible for full restitution regardless of the loss amount. After the judgment was filed, Petitioner appealed to the United States Court of Appeals for the Fourth Circuit. (Id., Doc. No. 119: Judgment; Doc. No. 134: Tr.

6

of Sentencing hearing).

D.  Direct Appeal

On appeal, Petitioner's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), contending that there were no meritorious issues for appeal, but also raising the questions of whether Petitioner's sentence of 125-months in prison, which was at the top end of his Guidelines range was too punitive, and whether this Court erred in declining to give him credit for the time he spent in custody on what he argues was a related charge. Petitioner filed a pro se supplemental brief which presented similar issues. See United States v. Webber, 402 F. App'x 796 (4th Cir. 2010) (unpublished). The Circuit Court concluded that Petitioner's challenge to his sentence must fail because the sentence was substantively and procedurally reasonable and that his within-Guidelines sentence was presumptively reasonable. In rejecting Petitioner's contention regarding custody credit, the Court found no error because the matter was essentially left open to allow for more information to be presented on the issue. Petitioner's judgment was affirmed in all respects after the Court conducted its Anders review and found no meritorious issues that could warrant relief.

This collateral proceeding under § 2255 follows. Petitioner raises three claims of ineffective assistance of counsel[1], and one claim of trial court error. Petitioner's contentions will be addressed herein.[2]

---

[1] Mr. Meier served as both Petitioner's trial and appellate counsel.
[2] The Court advised Petitioner of his right to file a response to the Government's motion to dismiss, pursuant to Roseboro v. Garrison, 528 F.2d 309 (1975), however he has failed to do so. (5:11-CV-00096, Doc. No. 6).

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Ineffective assistance of counsel

The Sixth Amendment of the United States Constitution provides that all defendants charged with a crime have the right to assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, Petitioner must still satisfy the standard set forth in Strickland. In regard to the second prong, Petitioner must demonstrate that

he was prejudiced by ineffective assistance of counsel by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

1. Ground One

Petitioner first argues that his counsel provided ineffective assistance on appeal by failing to challenge his "specific relevant conduct personally attributable to Petitioner . . ." (5:11-CV-00096, Doc. No. 1 at 4). Petitioner calls attention to his incarceration during some of the time the conspiracy was ongoing, and contends that by neglecting to focus on the time he spent incarcerated, Petitioner was subjected to greater accountability for the loss in the conspiracy which "skewed his total offense level and also subjected the Petitioner to an inaccurate application of the 18 U.S.C. § 3553 factor[s] which the Court considered." (Id.). The result of this omission, as Petitioner maintains, is that he was held responsible for an inordinate amount of

9

the monetary loss in the conspiracy, that is, more restitution, and he received a sentence that was greater than he otherwise would have received.

The test for ineffective assistance of appellate counsel is the same as it is for trial counsel. Specifically, "[i]n order to establish a claim that appellate counsel was ineffective for failing to pursue a claim of direct appeal, the applicant must normally demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) that there is a reasonably probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (internal quotations and citations omitted). In addition, appellate counsel is entitled to a "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993); see also Smith v. Robbins, 528 U.S. 259, 288 (2000) (appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citing Jones v. Barnes, 463 U.S. 745 (1983)).

The Court first notes that Petitioner raised the very substance of this claim on direct appeal in his pro se supplemental brief and the Fourth Circuit found that his arguments were without merit. See (5:11-CV-00096, Doc. No. 4-2: Petitioner's Supplemental Pro se Brief). Petitioner maintains that his counsel erroneously failed to argue that he should have received credit and that failure to present this argument deprived Petitioner of the inclusion of a "meritorious" argument on appeal. Petitioner also argued that this Court erred in declining to award him credit for his confinement during the course of the fraud conspiracy and to find that he played a lesser role in the scheme. The Fourth Circuit considered Petitioner's pro se

the monetary loss in the conspiracy, that is, more restitution, and he received a sentence that was greater than he otherwise would have received.

The test for ineffective assistance of appellate counsel is the same as it is for trial counsel. Specifically, "[i]n order to establish a claim that appellate counsel was ineffective for failing to pursue a claim of direct appeal, the applicant must normally demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) that there is a reasonably probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (internal quotations and citations omitted). In addition, appellate counsel is entitled to a "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993); see also Smith v. Robbins, 528 U.S. 259, 288 (2000) (appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citing Jones v. Barnes, 463 U.S. 745 (1983)).

The Court first notes that Petitioner raised the very substance of this claim on direct appeal in his pro se supplemental brief and the Fourth Circuit found that his arguments were without merit. See (5:11-CV-00096, Doc. No. 4-2: Petitioner's Supplemental Pro se Brief). Petitioner maintains that his counsel erroneously failed to argue that he should have received credit and that failure to present this argument deprived Petitioner of the inclusion of a "meritorious" argument on appeal. Petitioner also argued that this Court erred in declining to award him credit for his confinement during the course of the fraud conspiracy and to find that he played a lesser role in the scheme. The Fourth Circuit considered Petitioner's pro se

arguments and found them to be without merit. Webber, 402 F. App'x at 797. It would seem, then, that the Fourth Circuit's ruling precludes this Court from considering the merits of Petitioner's claims. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (In a Section 2255 proceeding, a petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered" and decided on direct appeal); United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (The law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court.") (citing United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993)).

However, to the extent his ineffective assistance claim survived direct review, the Court finds that it is without merit because he cannot show that the result of his appeal would have been different. At sentencing the Court found that the evidence presented in the PSR was credible and reliable and supported Petitioner's sentence of 125 months based on his vital role in the conspiracy – including training a recruit to fill out a check to present for purchase in the scheme to defraud retailers, and assisting others in running the scheme, notably Eric Brooks as his "right-hand man." In particular, the Court noted that Petitioner was in the business of receiving and selling stolen property, and gave specific attention to the size and scope of the conspiracy, his high criminal history score, and, among many other things, that Petitioner and his co-defendants preyed on those who may have been least likely to resist their recruitment efforts: homeless and drug-addicted people. Finally, the Court noted that Petitioner agreed in his plea agreement that he would be responsible for the full amount of restitution regardless of the resulting loss amount and the Court notes that Petitioner averred during his Rule 11 hearing that he agreed with each of the terms of the plea agreement. (5:08-CR-00048, Doc. No. 148:

Sentencing Tr. at 23; Doc. No. 72: Plea Agreement ¶ 8)).

Based on the foregoing, the Court finds that Petitioner has failed to carry his burden of demonstrating deficient performance, or prejudice for that matter, under Strickland, and this claim for relief will be denied.

2. Ground Two

Here, Petitioner argues that his trial counsel was ineffective for failing to move the Court for a downward departure prior based on his contention that he deserved credit for time-served on a Georgia sentence pursuant to USSG § 5G1.3 (5:11-CV-00096, Doc. No. 1 at 5).

As the Government observes, Petitioner has failed to alert this Court as to whether he believes that he is entitled to relief for an undischarged term of imprisonment under USSG § 5G1.3(b) or whether he contends that he could have qualified for a downward departure under Application Note 4 to § 5G1.3[3], and Petitioner failed to file a response to the Government's motion to dismiss and thus never provided the Court with a clarifying argument on this point. Nevertheless, if Petitioner contends he could have obtained relief under either of these provisions, his arguments must fail.

In order to support a downward departure under USSG § 5G1.3(b) for an undischarged term of imprisonment, Petitioner must show that he has was subject to an undischarged term of imprisonment which involved conduct relevant to the conduct leading to his conviction in this Court, and that he was subject to such undischarged term at the time the sentence was imposed in this Court which was on February 9, 2010, with judgment being entered on March 2, 2010. As noted during the sentencing hearing, Petitioner had already been discharged from his Georgia

---
[3] This provision provides that a defendant may still qualify for a downward departure even if his term of imprisonment has been discharged and he has fully served the term, and § 5G1.3(b) would have provided an offense level adjustment if the discharged term had been undischarged at the time of the sentencing on the instant offense.

12

sentence and was not subject to an undischarged term for that offense at the time he was convicted for the instant offense. (5:08-CR-00096, Sentencing Tr. at 4) (counsel noting during sentencing that Petitioner was incarcerated in Georgia from July 24, 2008, until his release on June 13, 2009). See also (5:11-CV-00096, Doc. No. 4-4) (release date information issued by the Georgia Department of Corrections). For the reasons stated, this argument will be overruled.

In the event Petitioner intended to argue for relief under Application Note 4 because the Georgia sentence which he had already served was for "conduct which was directly relevant, was related to the instant offense which may or may not have been included in the guideline calculation," this argument likewise fails. (5:11-CV-00096, Doc. No. 1 at 5). The Court first observes that the Georgia conviction was not identified in Petitioner's PSR, therefore the Court did not consider it when fashioning a Guidelines range and second, Petitioner's counsel argued, albeit not through a motion for downward departure, that Petitioner should receive credit for his time spent on the Georgia conviction – which was a felony conviction for deposit account fraud and theft by deception – and he submitted documents related to the convictions which were received into evidence during sentencing. See (Id., Doc. No. 4-3).

In sum, Petitioner cannot demonstrate deficient performance because his counsel made his position for credit clear and he cannot demonstrate that but for counsel's failure to file the motion for downward departure that his sentence would have been more lenient. For these reasons, this claim for relief will be denied.

3. Ground Three

Petitioner next argues that the trial court "committed plain/clear error by not making a specific determination as to credit for time petitioner had spent in custody." (5:11-CV-00096,

Doc. No. 1 at 7). As the Court found previously herein, Petitioner presented this argument to the Fourth Circuit on direct appeal in his pro se supplemental brief, and the Court concluded that there was no abuse of discretion in the imposition of Petitioner's sentence." <u>Webber</u>, 402 F. App'x at 797. This claim will be denied for two reasons. First, because this issue has already been presented and decided on direct appeal. Second, the Government is entitled to enforcement of the waiver provision in Petitioner's plea agreement which provided that he could not attack his conviction or sentence except on grounds of prosecutorial misconduct or ineffective assistance of counsel. This waiver may be enforced so long as Petitioner knowingly and voluntarily chose to waive such rights. <u>See</u> <u>United States v. Lemaster</u>, 403 F.3d 216, 220 (4th Cir. 2005).

Petitioner was placed under oath during his Rule 11 hearing and carefully examined by Judge Keesler regarding his understanding and agreement with the terms of the plea agreement – including his decision to waive his right to collateral review except as noted – and Petitioner averred that he did in fact agree with each of the terms in the plea agreement. Furthermore, this Court determined at the outset of his sentencing hearing that the Rule 11 hearing was properly conducted and that the Petitioner had in fact entered a knowing and voluntary guilty plea. Therefore, the Government's defense of waiver will prevail in this instance and Petitioner's claim here will be denied.

        4.     Ground Four

In his final claim, Petitioner argues that his trial counsel was ineffective in failing to challenge the sentencing disparity that he contends existed between his sentence and the sentences that were meted out for his fellow co-defendants. (5:11-CV-00096, Doc. No. 1 at 8).

This is yet another attempt to argue that he should not have been held accountable for such a percentage of the monetary losses suffered by the unwitting victims of the fraud conspiracy – of which he was a voluntary, active, and admitted member – and that his sentence of 125 months was disproportionate to the amount of time he spent participating in the conspiracy. This argument is without merit.

In the first place, Petitioner appears to overlook the fact that his counsel <u>did</u> argue that he was less culpable because he was incarcerated during some of the time the conspiracy was ongoing, and in the second place, Petitioner has once again attempted to eschew the black letter terms of his plea agreement in which he agreed that he would be liable for full restitution and that he understood, and agreed that he could be sentenced to a term of up to 20-years' imprisonment. Petitioner has failed to demonstrate deficient performance, or prejudice here and this final claim will be denied.

IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 motion is without merit and the Government's motion to dismiss will be granted.

**IT IS, THEREFORE, ORDERED** that:

1. The Government's motion to dismiss is **GRANTED**. (Doc. No. 5).

2. Petitioner's § 2255 motion is **DENIED** and **DISMISSED**. (Doc. No. 1).

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: September 23, 2014

Richard L. Voorhees
United States District Judge